IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MARINE INSURANCE COMPANY LIMITED, | § § § § | |
| Plaintiff, | § § § § § | C. A. No. 3:13-cv-00437<br>Judge Gregg Costa |
| v. | § § | |
| JOEL CRON, ET AL. | § § § | |
| Defendants. | § | |

## MARINE INSURANCE COMPANY LIMITED'S
## MOTION FOR FINAL SUMMARY JUDGMENT

Plaintiff and Counter-Defendant, MARINE INSURANCE COMPANY LIMITED ("MICL") files its Motion for Final Summary Judgment under FED.R.CIV.P. 56, and respectfully shows as follows:

### I.
### Summary of Requested Relief

The subject marine hull insurance policy[1] is *void ab initio* under New York law because Joel Cron made material misrepresentations in his application on which MICL relied when deciding to issue the insurance policy.[2] Specifically, Joel

---

[1] The policy provides liability (P&I cover) and property (hull and machinery) coverage for yacht damage. *See* Ex. 1, p 3 of 47. The original policy covered the period July 21, 2011 to July 21, 2012. The renewal policy covered the period July 21, 2012 to July 21, 2013.

[2] The material misrepresentations included how much Joel Cron paid for the boat and who owned it. In support of this motion, MICL attaches a copy of the insurance policy (Ex. 1), excerpts from the deposition of Jennifer Cron (Ex. 2), excerpts from the deposition of Joel Cron (Ex. 3) and a declaration from MICL

Cron represented on the Osprey Yacht Application, dated July 20, 2011, which he signed, that he paid $300,000.00 for the M/V RELENTLESS (hereinafter referred to as "RELENTLESS" or "Vessel"), but the bill of sale from ACE Insurance Company to *Jennifer* Cron noted the purchase price was $65,000.00. The date of the bill of sale was August 25, 2010. It was not until July 25, 2011 that Jennifer transferred ownership of the RELENTLESS to Joel, via a bill of sale, for the stated consideration of **$1.00**!

The insurance policy contains a choice-of-law clause under which MICL and Joel Cron agreed that "[t]his insurance shall be governed by and construed in accordance with the laws of the State of New York[.]"[3] Under New York law, the prospective insured is required to disclose all known circumstances that materially affect the risk. *Puritan Ins. Co. v. Eagle S.S. Co. S.A.*, 779 F.2d 866, 870 (2nd Cir. 1985). "This stringent doctrine requires the assured to disclose to the insurer all known circumstances that materially affect the risk being insured. Since the assured is in the best position to know of any circumstances material to the risk, he must reveal those facts to the underwriter, rather than wait for the underwriter to inquire." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 13 (2nd Cir. 1986). A non-disclosed fact or misrepresentation is material if it would affect the insurer's

---

(Ex. 4). Included within these exhibits are the Osprey Yacht Application, the Bill of Sale of August 25, 2010 and the Bill of Sale of July 25, 2011, each of which is properly attested.
[3] *See* Ex. 1, a true and correct copy of the insurance policy, p 7 of 47, choice of law and jurisdiction clause.

decision to insure the risk at all, or insure it at a particular premium, and such non-disclosure or misrepresentation renders the policy *void ab initio*. *St. Paul Fire & Marine Ins. Co. v. Matrix Posh, LLC*, 507 F. App'x 94, 95-96 (2nd Cir. 2013) (holding that owner's failure to disclose prior damage to vessel to insurer rendered marine insurance policy *void ab initio*.) In this case, the insurance policy is *void ab initio* under New York law and provides no coverage.

Alternatively, whether Texas or New York law applies, the Crons' counterclaim should be summarily dismissed for any one or more of the following reasons: (1) Jennifer had no insurable or other financial interest in the vessel after July 25, 2011,[4] (2) Jennifer has no opinion on how the insurance company handled the claims,[5] (3) Joel testified the insurer did not act with ill will,[6] and (4) Joel testified the insurer adequately investigated and did a good job looking into the claims.[7] Joel Cron and Jennifer Cron's denoted extra-contractual claims fail as a matter of law under either Texas or New York precedent.[8]

---

[4] *See* attached Ex. 2, deposition of Jennifer Cron, P14, L25 to P15, L3; P32, L22-25. To possess a potential first-party claim, a person must have an insurable interest in the insured property. *Tellepsen Builders, L.P. v. Kendall/Heaton Assoc. Inc.*, 325 S.W.3d 692, 697 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (citations omitted); *15625 Ft. Bend Ltd. v. Sentry Select Ins. Co.*, No. H-12-cv-0600, 2014 WL 1052608, at *5 (S.D. Tex. Mar. 13, 2014) (citations omitted); *W.W. Rowland Trucking Co., Inc. v. Max America Ins. Co.*, No. 13-20341, 2014 WL 685217, at *5 (5th Cir. Feb. 24, 2014) (citations omitted).
[5] *See* Ex. 2, deposition of Jennifer Cron, P35, L13-15.
[6] *See* attached Ex. 3, deposition of Joel Cron, P79, L6-11.
[7] *Id.* at P99, L15-19; P100, L3-5; P100, L14-20.
[8] Regarding Texas law, see *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995); *Liberty Nat. Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996). The recognized exceptions to this "no coverage, no bad faith rule" are if the insurer commits some act, so extreme, that would cause injury independent of the policy claim or the insurer fails to timely investigate its insured's claim. *Stoker*, 903 S.W.2d at 341. Neither of those exceptions exists here. Regarding New York law, see *Great Lakes Reinsurance (UK)*

3

MICL is entitled to summary judgment on its request for declaratory relief and Joel Cron and Jennifer Cron's counterclaim.

## II.
## Factual Background

The Crons, acting either together or through Joel Cron, engaged the services of a Florida surplus lines insurance market agent for the purpose of obtaining a policy of Marine Insurance for the RELENTLESS.

On July 20, 2011, Joel Cron filled out, signed and submitted to Plaintiff an "Osprey Yacht Application" Form through Hull & Company, his agent, for the purposes of obtaining insurance in the Lloyds, London Marine Insurance Market.[9]

As part of the above-referenced application for insurance, Joel Cron had a duty to provide accurate and truthful answers to several questions which are uniformly considered to be material by marine insurance underwriters in deciding whether to bind coverage, the terms and conditions of coverage and how to set premiums.

On page one of the application, Joel Cron falsely represented to Plaintiff that he was the owner of RELENTLESS.[10] He was not. His daughter, Jennifer Cron

---

*PLC v. Tico Time Marine LLC*, Civil Action No. 4:10-CV-2060, 2011 WL 1044154, at *4 (S.D. Tex. Mar. 16, 2011) (noting that New York does not recognize Texas statutes such as the Texas Insurance Code).
[9] *See* Ex 4, declaration of Wesley Absolom.
[10] *See* Ex. 2, deposition of Jennifer Cron, P32, L18-21.

owned the Vessel at the time Joel signed the application and only afterwards Jennifer sold it to Joel for $1.[11]

When asked on the application to provide the purchase date and purchase price, Joel Cron falsely represented to Plaintiff that he paid $300,000.00 to purchase RELENTLESS.[12] On the contrary, *Jennifer* Cron paid $65,000.00 to purchase the Vessel at a salvage sale as evidenced by a Bill of Sale she signed on August 25, 2010.[13] The vessel had previously been declared a constructive total loss.[14]

On July 25, 2011, Jennifer Cron signed a Bill of Sale transferring the Vessel to Joel Cron, as the denoted "Buyer" for the sum of "ONE DOLLAR AND OTHER VALUABLE CONSIDERATION..."[15] Joel Cron did not pay $300,000.00 for the Vessel as he falsely represented in the Osprey Yacht Application. He paid, if anything, $1.00.[16]

The Application includes a section entitled **PLEASE READ BEFORE SIGNING APPLICATION** under which, Section 2, Joel Cron was acknowledging that **"[a]ny misrepresentation in this application for insurance**

---

[11] *See* Ex. 3, deposition of Joel Cron, P32, L10-25; P33, L19-22; P34, L7-9; P34, L14-16; P34, L20-25.
[12] *See* Ex. 4, declaration of Wesley Absolom. *See also* Ex. 2, deposition of Jennifer Cron, P34, L15-25 and Ex. 3, deposition of Joel Cron, P20, L25 to P21, L2; P24, L11-16; P24, L20-24.
[13] *See* Ex. 2, deposition of Jennifer Cron, P17, L3-8. *See also* Ex. 3, deposition of Joel Cron, P26, L13-18; P27, L3-8.
[14] *See* Ex. 3, deposition of Joel Cron, P27, L20-25.
[15] *See* Ex. 2, deposition of Jennifer Cron, P32, L9-17; P34, L15-25. *See also* Ex. 3, deposition of Joel Cron, P33, L19-22; P34, L7-9; P34, L14-16; P34, L20-25.
[16] *Id.*

**will render insurance coverage null and void from inception**." (emphasis in original).[17]

On or about July 21, 2011, MICL issued the marine insurance policy in reliance on Joel Cron's material misrepresentations.[18] At no time between the submission of the application and the issuance of the policy did Joel Cron or Jennifer Cron advise MICL that the material information in the application was incorrect.[19] MICL filed its declaratory judgment action as an admiralty claim under Rule 9(h). The Crons filed a counterclaim for breach of contract, attorneys' fees and violations of the Texas Deceptive Trade Practices Act (DTPA) and Texas Insurance Code.

## III.
## Legal Authority

### A. Summary Judgment Standards

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[20]

---

[17] *See* Ex. 4, declaration of Wesley Absolom.
[18] *Id.*
[19] *See* Ex. 3, deposition of Joel Cron, P45, L24 to P46, L3. *See also* Ex. 4, declaration of Wesley Absolom.
[20] FED. R. CIV. P. 56(c); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)).

The party moving for summary judgment, in this case MICL, bears the initial responsibility of identifying the basis for its motion and the parts of the record that support its claim that no genuine issue of material fact exists.[21] The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant.[22] A fact is material if it "might affect the outcome of the suit under governing law."[23]

MICL "is not required to negate elements of the non-moving party's case."[24] Once MICL satisfies its initial burden, the burden then shifts to the non-moving party, *i.e.,* the Crons, to show that the court should not grant summary judgment.[25] To do so, the Crons must "go beyond the pleadings" to identify specific facts that establish a genuine issue for trial.[26] The Crons must present "significant probative evidence" to defeat the motion.[27] The Crons may not present a showing of genuine issue of fact by creating "some metaphysical doubt as to the material facts" by creating "conclusory allegations, "unsubstantiated assertions or by only a scintilla of the evidence.[28]

---

[21] *Burge v. Parish of St. Tammany*, 187 F.3d 452, 465 (5th Cir. 1999).
[22] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).
[23] *Id.*
[24] *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998).
[25] *Ragas*, 136 F.3d at 458.
[26] *Celotex*, 477 U.S. at 324.
[27] *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994) (quotation omitted).
[28] *Little v Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).

**B. Enforceability of Choice of Law Clause in a Marine Insurance Policy**

"Under federal maritime choice of law rules, contractual choice of law provisions are generally recognized as valid and enforceable." *Great Lakes Insurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.3d 236, 242 (5th Cir. 2009) (quoting from its earlier opinion in *Stoot v. Fluor Drilling Services, Inc.*, 851 F.2d 1514 (5th Cir. 1988), "where the parties have included a choice of law clause, that state's law will govern unless the state has no substantial relationship to the parties or the transaction or the state's law conflicts with the fundamental purposes of maritime law.") *Id.* at 243. The Fifth Circuit, in *Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, held that the insured failed to show that application of New York law to the dispute was unreasonable or unjust and there was no "showing that New York law conflicts with any fundamental purposes of maritime law." 585 F.3d at 244.

There, the insurer argued that the policy was void at inception because of the insured's material misrepresentations and non-disclosures in the insurance application, among them, what the insured paid for the vessel, the vessel's loss history and its status of repairs. *Id.* at 238. The policy contained a choice-of-law provision calling for disputes to be adjudicated under substantive admiralty law, which applies the *uberrimae fidei*, or utmost good faith doctrine. However, the policy provided that "where no such well established, entrenched precedent exists,

8

this insuring agreement is subject to the substantive laws of the state of New York." *Id.* at 238-39. Quoting from 2 Schoenbaum, *Admiralty And Maritime Law*, at 297-300 (4th Ed., 2004), the Fifth Circuit elaborated on the *uberrimae fidei* doctrine, explaining:

> "Marine insurance is a contract '*uberrimae fidei*', requiring the utmost good faith by both parties to the contract. Often the insurer lacks the practicable means to verify the accuracy or sufficiency of facts provided by the insured for purposes of establishing the contractual terms. Consequently, the doctrine [sic] *uberrimae fidei* imposes the highest degree of good faith. The assured is bound, although no inquiry be made, to disclose every fact within his knowledge that is material to the risk.
>
> Failure by the assured to disclose all available information will allow the insurer to avoid the policy. In marine insurance, contrary to the general rule applicable to other kinds of insurance, any misrepresentation or omission to communicate a material fact will vitiate the policy whether such omission is intentional or results from mistake, accident, forgetfulness, or inadvertence. Moreover, this representation and disclosure requirement in marine insurance utilizes a broad definition of materiality in defining which facts necessitate disclosure. A fact is material if, to a prudent insurer, its existence would affect decisions on the risk assumed. The policy may be in a proper form, yet a showing of lack of the utmost good faith as required under the doctrine of *uberrimae fidei* will void the contract *ab initio* or even after the risk has attached."

*Id.* at 239, n. 5.

The Fifth Circuit, in *Albany Ins. Co. v. Kieu*, 927 F.2d 882 (5th Cir. 1991), held that the New York doctrine of *uberrimae fidei* (utmost good faith) is reasonably similar to Texas law's treatment of misrepresentations relating to insurance policies. In *Kieu*, the court said:

9

> Under the *uberrimae fidei* doctrine, an assured's material misrepresentations invalidate the policy of insurance *ab initio*. [citation omitted]. Under Texas law, an assured's misrepresentations may invalidate the policy of insurance, but only if the insured intended to deceive the insurer. [citation omitted]. Texas law, unlike federal law, imposes an appropriate limitation that relatively minor misstatements which the insured did not intend to make do not afford the insurer an excuse to refuse payment. The fundamental nature of both laws, however, is the same. Texas insurance law shares the concern of federal maritime law that an assured should not profit from her material misrepresentations to the underwriter.

927 F.2d at 887. Thus, the *uberrimae fidei* doctrine, which both maritime and New York law accepts, does not fundamentally conflict with either Texas or maritime law. *Kieu* observed that "[s]tate law is particularly significant in marine insurance disputes [and the] presumption of state law is, by now, 'axiomatic.'" *Id.* at 886. *Kieu*, however, did not address the *uberrimae fidei* doctrine in the context of a choice-of-law clause.[29]

Here, the insurance policy to which MICL and Joel Cron agreed contained a choice-of-law clause that the insurance "shall be governed by and construed in accordance with the laws of the State of New York..."[30] New York state law applies the *uberrimae fidei* doctrine.[31] As *Kieu* went on to say: "This court does not hold that federal maritime law no longer embraces the *uberrimae fidei* doctrine...Neither does this Court hold that state insurance law always will

---

[29] "In an appropriate case, it is entirely possible that application of the [*uberrimae fidei*] doctrine would be more appropriate than application of the relevant state insurance regulations." *Id.* at 890.
[30] *See* Ex. 1 and Ex. 4.
[31] *See* discussion in Section III, C.

supercede [sic] the *uberrimae fidei* doctrine." *Id.* at 890; *see also Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.3d at 239, n. 5. Should non-movants posit that *Kieu* calls for the application of Texas law in this case, it does not. New York law applies. New York has a substantial relationship to the parties. Compare *Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, where the court said:

> We hold that [the insured] has not carried its burden of showing that application of New York law, as provided in the policy, would be unreasonable or unjust. There is no showing that the fact that [the insurer], a United Kingdom entity whose most substantial relationship in the United States is with New York, where it maintains its agent for service of process (also reflected in the policy) and its United States Trust Fund account, does not constitute a reasonable basis for the choice of New York law to govern it marine insurance policy providing hull coverage to an ocean going vessel expected to travel up to 100 miles offshore along the United States Gulf Coast and the Gulf of Mexico.

585 F.3d at 244.

Here, MICL's resident agent for service of process is based in New York City and is specifically identified in the insurance policy.[32] The Vessel was a 60'11" Hatteras, which would have been capable of transiting in the same waters as the ocean going vessel in *Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.* The policy provides coverage for transits in "[i]nland and coastal waters of U.S Gulf Coast States including all interconnecting and navigable waters

---

[32] *See* Ex. 4, declaration of Wesley Absolom.

therein." MICL's U.S. trust fund account is based in New York.[33] The same criteria relied upon by the Fifth Circuit – in finding that applying New York law would not be unreasonable or unjust – exists in this case. For the aforementioned reasons, the policy's New York choice-of-law clause is enforceable.

### C. Under New York's Uberrimae Fidei Doctrine, the Policy is Void Ab Initio

As discussed above in *Kieu*, under New York's *uberrimae fidei* doctrine, an assured's material misrepresentations invalidate an insurance policy *ab initio*. *See, e.g., Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 13 (2nd Cir. 1986) (voiding a marine insurance policy for failure to disclose the cancellation of a prior policy) ("[i]t is well-established under the doctrine of *uberrimae fidei* that the parties to a marine insurance policy must accord each other the highest degree of good faith."); *Puritan Ins. Co. v. Eagle S.S. Co.,* 779 F.2d 866, 870 (2nd Cir.1985) (holding *uberrimae fidei* applicable to marine insurance policies) ("the party seeking insurance is required to disclose all circumstances known to him which materially affect the risk. If he acquires material information after having applied for insurance, he is required to communicate that information to the proposed insurer.")

Under New York law, a misrepresentation of the insured property's purchase price constitutes a material misrepresentation. *See Commercial Union v. Lord,* 224

---

[33] *Id.*

F. App'x 41, 43 (2nd Cir. 2007) (affirming summary judgment in favor marine insurer, the court held that "[t]he District Court correctly concluded that Lord and Shuman made material misrepresentations on the marine insurance policy application, in violation of the doctrine of *uberrimae fidei,* ... including the purchase date, purchase cost, and facts surrounding when and where the vessel was built and by whom[.]"); *see also Commercial Union Ins. Co. v. Lord,* 392 F.Supp.2d 402, 405-406 (D. Conn. 2005) (court held policy void *ab initio* on basis of false purchase price in policy application); *Royal Ins. Co. of America v. Harbor Shuttle, Inc.,* No. CV-97-3828 (CPS), 1999 WL 33236523 (E.D.N.Y. Jan. 25, 1999) (insured paid $650,000 for ferry, but listed purchase price as $5.1 million in policy application; court held that "[i]t is well settled that intent to deceive is not necessary to rescind the contract. *See Wathen v. Public Fire Insurance Co.,* 61 F.2d 962, 964 (2nd Cir. 1932). A plaintiff only needs to prove that the representation of a fact was false and material. *See id.* Based on the undisputed facts, it is appropriate to grant summary judgment to [the insurer].").

Other cases have held policies *void ab initio* for comparable, even less egregious misrepresentations under the *uberrimae fidei* doctrine. In *Certain Underwriters at Lloyd's v. Montford,* 52 F.3d 219, 222 (9th Cir. 1995), the court affirmed summary judgment in the insurer's favor on, among other grounds, the insured's misrepresentation of the vessel's purchase price. The insured represented

13

on his application that he had paid $925,000.00 for the vessel while discovery revealed he had paid less than $500,000.00. *Id.* at 221. The court said:

> We reject Montford's argument that inserting the 'present market value' of a vessel, rather than the actual purchase price, is an acceptable industry practice in applying for marine insurance *when the application specifically asks for the purchase price.* Under these circumstances, the vessel's purchase price is unquestionably a fact material to the risk. Underwriters were entitled to void the policy based on Montford's material misrepresentation, and the district judge did not err in granting summary judgment on this ground") (emphasis in original).

*Id.* at 222; *see also New Hampshire Ins. Co. v. C'est Moi, Inc.*, 519 F.3d 937, 939-40 (9th Cir. 2007) (yacht's purchase price was material; summary judgment for insurer upheld on appeal; purchase price was represented to be $450,000.00 when it was only $300,000.00, but insured stated he had taken that the higher figure was accurate because it reflected the amount that it had spent restoring the vessel following an earlier fire) ("The purchase price of a vessel 'is unquestionably a fact material to the risk,' [quoting *Montford*] as it provides an objective measure of the vessel's worth and the corresponding risk of insuring the vessel."); *AGF Marine Aviation & Transport v. Cassin*, 544 F.3d 255, 264-65 (3rd Cir. 2008) (applying New York law) (insured's misrepresentation of purchase price of yacht was breach of *uberrimae fidei* and summary judgment for insurer upheld on appeal; the insured represented the purchase price on the application was $600,000.00, although it was conceded that only $400,000.00 in monetary value was exchanged)

14

("We conclude that when a marine insurer asks for the purchase price, it is a fact material to the risk, the misrepresentation of which violates *uberrimae fidei*."); *Markel Am. Ins. Co. v. Nordarse*, 297 F. App'x 852, 853 (11th Cir. 2008) (affirming the district's court granting of summary judgment in favor of Markel under the doctrine of *uberrimae fidei* after Nordase represented the vessel's purchase price on Markels' marine insurance application to be $180,000.00, although during his deposition he conceded he paid at most $126,000.00).

Joel Cron's misrepresentations about what he paid for the Vessel – **he said $300,000.00 when in truth it was transferred to him for the sum of $1.00** – violates the uberrimae fidei doctrine and renders the policy *void ab initio*.[34]

---

[34] In *Markel*, the Eleventh Circuit said:

> In granting summary judgment to Markel, the district court relied on the marine insurance doctrine of *uberrimae fidei* as the controlling law of this circuit. *HIH Marine Servs. v. Fraser*, 211 F.3d 1359, 1362 (11th Cir. 2000) (an insured must fully and voluntarily disclose to the insurer all material facts necessary in calculating the scope of the insurance risk assumed). A material misrepresentation on the marine insurance application is grounds for voiding the policy. *Id.* at 1363.
>
> …
>
> The district court found that undisputed evidence indicated that the purchase price of the vessel was a material factor in Markel's underwriting decision to accept the risk of insuring the vessel. As Markel did not have an actual bill of sale at the time it made its decision, it relied on Nordarse's written representation on the application, that the purchase price and current value of the vessel was $180,000. The district court concluded that Markel was entitled to void the policy *ab initio*.

*Id.*

### D. Under New York Law, the Crons' Denoted Texas Insurance Code and DTPA Causes of Action are not Cognizable

In *Great Lakes Reinsurance (UK) PLC v. Tico Time Marine LLC*, Civil Action No. 4:10-CV-2060, 2011 WL 1044154, at *3-5, n.3 (S.D. Tex. Mar. 16, 2011), the court enforced a New York choice-of-law provision in a marine insurance policy in the context of a motion to dismiss, holding that because the allegations of violations of the Texas Insurance Code and the DTPA were subject to the substantive laws of New York and New York does not recognize Texas statutes, the Texas state law claims must be dismissed. The marine insurance policy in this case also contains a New York choice-of-law clause and should be similarly enforced vis-à-vis the Cron's counterclaims.[35]

### E. Under Texas Law, the Crons' Counterclaim Should be Dismissed

In the alternative, even were Texas law to apply, Jennifer Cron had no insurable interest in the vessel at the time of the claims[36] and Joel Cron testified that the insurer conducted an adequate investigation and did a good job on both claims.[37] It is a fundamental precept of Texas law that where coverage does not exist, there can be no claim for bad faith. *Stoker*, 903 S.W.2d at 341; *Akin*, 927

---

[35] New York courts have ruled that similar choice-of-law clauses encompass tort claims. *Tico*, 2011 WL 1044154, at *4 (citing New York cases). The choice-of-law clause to which MICL and Joel Cron agreed expressly states: "This insurance shall be governed by and construed in accordance with the laws of the State of New York…" The declaratory judgment action and the Crons' denoted counterclaims arise out of, and are inextricably linked with, "this insurance" policy.

[36] *See* footnote 4.

[37] *See* footnotes 6 and 7.

S.W.2d at 629; *Scottsdale Ins. Co. v. Sally Group, LLC*, No. 4:11-cv-01184, 2012 WL 1144577, at *14 (S.D. Tex. Apr. 4, 2012) ("Under Texas law, '[a]n insured is not entitled to recover under an insurance policy unless it proves its damages are covered by the policy.'") (quoting *Simco Enterprises, Ltd. v. James River Ins. Co.*, 566 F.Supp.2d 555, 567 (E.D. Tex. 2008). The Texas Supreme Court, in *Stoker*, recognized an exception to this general rule: an insurer could be liable absent coverage if the insurer "commit[s] some act, so extreme, that would cause injury independent of the policy claim." 903 S.W.2d at 341.

Assuming Texas law applies to the Crons' counterclaim, there is no genuine issue of material fact as to whether MICL's conduct was "extreme." Joel testified the insurer did not act with ill will.[38] Joel also testified the insurer adequately investigated and did a good job looking into the claims.[39] Therefore the Crons' counterclaim should be dismissed as a matter of law.

WHEREFORE, Plaintiff and Counter-Defendant, MARINE INSURANCE COMPANY LIMITED prays that its Motion for Summary Judgment be granted in all respects and for such other and further relief to which it may be entitled.

---

[38] *See* footnote 6.
[39] *See* footnote 7.

Respectfully submitted,

**BLANK ROME LLP**

_____
Keith B. Letourneau
Texas Bar No. 00795893
Federal I.D. No. 20041
700 Louisiana, Suite 4000
Houston, Texas 77002
kletourneau@blankrome.com
(713) 228-6601 – Telephone
(713) 228-6605 – Facsimile
*Attorney-in-Charge for Marine Insurance Company*

**OF COUNSEL:**
Wm. Tracy Freeman
Texas Bar No. 00793757
Federal I.D. No. 19588
**BLANK ROME LLP**

Andrew W. Anderson
Russell M. Pfeifer
200 South Biscayne Blvd., Suite 3000
Miami, FL 33131-2332
(305) 372-9044 – Telephone
(305) 372-5044 – Facsimile
**THE CHARTWELL LAW OFFICES, LLP**

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing was served in accordance with Rule 5 of the Federal Rules of Civil Procedure on all counsel of record, this 18th day of July 2014, as follows:

Scott Arnold
Law Offices of Scott Arnold, P.C.
310 Main Street, Suite 200
Houston, Texas 77002

                                              Keith B. Letourneau