UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MARINE INSURANCE COMPANY LIMITED, | § § § § | |
| Plaintiff, | § § | |
| VS. | § | CIVIL ACTION NO. 3:13-CV-00437 |
| JOEL CRON, *et al*, | § § § | |
| Defendants. | § § | |

# **MEMORANDUM AND ORDER**

Plaintiff Marine Insurance Company Limited (Marine) seeks a summary judgment ruling that the insurance policy it sold Defendants is void because the policy application contained a misrepresentation about the boat's purchase price. The outcome turns on a choice-of-law issue. The insurance policy contains a New York choice-of-law provision. If it is valid, Marine prevails because New York follows the *uberrimae fidei* ("utmost good faith") doctrine under which a material misrepresentation voids a policy without an inquiry into an insured's intent. If New York law does not apply, summary judgment would not be appropriate as Marine would have to prove intent to deceive—a quintessential fact issue—under the Fifth Circuit's decision in *Albany Insur. Co. v. Kieu*, 927 F.3d 882 (5th Cir. 1991) (holding, in a case not involving a contractual choice-of-law provision, that

maritime choice-of-law principles would apply Texas insurance law under similar facts to those in this case).

## I. BACKGROUND

Defendant Joel Cron owns a marine salvage repair and resale business. In 2007, he brought his daughter, Defendant Jennifer Cron, into the business, making her 1/3 owner and retaining 2/3 of the ownership interest for himself. On or about August 25, 2010, Jennifer Cron acquired a 61-foot Hatteras yacht at auction in New Jersey on behalf of the company for $65,000. The Crons renamed this yacht the "M/V RELENTLESS." RELENTLESS was at auction because it had been declared a "constructive total loss" by the insurance company selling it, meaning the cost to repair it was greater than the market value the insurer believed it would ultimately fetch.

Joel Cron disagreed and endeavored to restore the vessel to "first class condition." After making some preliminary repairs to improve its seaworthiness, Mr. Cron piloted the vessel from New Jersey to Texas. Once Mr. Cron got the RELENTLESS to Texas, he "began a systematic, complete overhaul . . . using first class material and craftsmanship, and restored the vessel to an excellent condition." Docket Entry No. 67 at 5.

In July 2011, Joel Cron refinanced the yacht. The bank required insurance for the vessel. An agent—Anchor Marine Insurance Agency—assisted Joel with

finding insurance and filling out the application because of his difficulty with "handling and understanding paperwork of this sort." Docket Entry No 67 at 7. The insurance application included spaces for "Market Value" and "Purchase Price," both of which were filled in with "$300,000" at Mr. Cron's direction. Cron and those assisting him decided that $300,000 was the proper response to the "Purchase Price" prompt based on "'what I have in it' in terms of money material and labor." *Id.* Cron stated in the application that he purchased the yacht on June 23, 2011. Cron also attached to the application the results of a marine survey of RELENTLESS in support of the claimed market value.

After the application passed through several intermediaries, Marine issued a marine insurance policy for the yacht with a "SUM INSURED/AGREED VALUATION" of $305,000 (including Joel Cron's personal effects) based on the representations in Cron's application. Among other provisions, the insurance policy provided that it "shall be governed by and construed in accordance with the laws of the State of New York."

During the same timeframe when Joel Cron was obtaining the refinancing and insurance, Jennifer Cron was in the process of leaving the business. As a result, on July 25, 2011—after the policy had been issued—she transferred her 1/3 interest in RELENTLESS to Joel Cron in exchange for "ONE DOLLAR AND

OTHER VALUABLE CONSIDERATION," namely his assumption of the business's debts.

On July 4, 2012, RELENTLESS ran aground near Redfish Island in Galveston Bay. The Crons filed a claim, and Ropner, Marine's servicing agent, approved a partial payment totaling $16,984. Before being relaunched after the completion of repairs, RELENTLESS caught fire while in drydock at a boat yard in Dickenson, TX. The fire resulted in damage exceeding the policy limits—a total loss. Marine's investigation determined that the fire was most likely intentionally set, but could not determine by whom.

Marine filed this action in the Southern District of Florida seeking a declaratory judgment invalidating the insurance policy as a result of alleged misrepresentations in the application. The case was then transferred to the Southern District of Texas on the Crons' motion, after which Marine moved for summary judgment on the ground that under New York law the misrepresentation concerning purchase price voids the policy.

## II.   ANALYSIS

Resolution of this motion turns on the validity of the choice-of-law provision. Misrepresenting the purchase price as $300,000, when it was actually $65,000,[1] would constitute a material misrepresentation under New York's

---

[1] Because the Court views all facts in the light most favorable to the nonmovant at the summary

*uberrimae fidei* doctrine. *See Commercial Union v. Lord*, 224 F. App'x 41, 43 (2nd Cir. 2007) ("The District Court correctly concluded that Lord and Shuman made material misrepresentations on the marine insurance policy application, in violation of the doctrine of *uberrimae fidei*, . . . including the purchase date, purchase cost, and facts surrounding when and where the vessel was built and by whom." (citing *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 13 (2d Cir. 1986)); *see also Commercial Union Ins. Co. v. Lord*, 392 F. Supp. 2d 402, 405–06 (D. Conn. 2005) (holding policy void *ab initio* on basis of listing the purchase price in the policy application as $450,000 when the insured actually purchased the vessel for $48,000 and subsequently made improvements to the vessel he claimed were worth the additional $402,000); *Royal Ins. Co. of Am. v. Harbor Shuttle, Inc.*, 1999 WL 33236523 (E.D.N.Y. Jan. 25, 1999) (holding that "[i]t is well settled that intent to deceive is not necessary to rescind the contract" and granting summary judgment in favor of the insurer in a case where insured paid $650,000 for a ferry but listed the purchase price as $5.1 million in the policy application (citing *Wathen v. Pub. Fire Ins. Co.*, 61 F.2d 962, 964 (2nd Cir. 1932)). Marine seeks summary judgment solely under New York law, apparently conceding that it would have to prove intent to deceive at trial if the choice-of-law provision is held invalid. This much

---

judgment stage, we consider the purchase price to be the $65,000 Jennifer Cron paid at auction rather than $1 Joel Cron paid her to transfer the title. Furthermore, the conveyance for $1 occurred after Joel Cron applied for the policy, making that an inappropriate value to have included at that time.

is clear from two Fifth Circuit cases that also involved misstatements in insurance policies about the purchase price of a boat. In *Kieu*, the court of appeals held that because *uberrimae fidei* was not sufficiently entrenched in federal maritime law, Texas insurance law with its intent requirement should apply. 927 F.2d at 887–90. The court faced a similar marine insurance dispute years later in *Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.3d 236, 242 (5th Cir. 2009). *Great Lakes* involved one significant difference that turned out to be dispositive: the parties had contracted to apply New York law. Because the court found that the choice-of-law agreement was valid, *uberrimae fidei* was applied to resolve that dispute in favor of the insurer. *Id.* at 244–45.

This Court therefore must first apply the *Great Lakes* framework to determine if the choice-of-law provision is valid. As that decision explained, "[u]nder federal maritime choice of law rules, contractual choice of law provisions are generally recognized as valid and enforceable."[2] *Id.* at 242 (citing Schoenbaum, ADMIRALTY AND MARITIME LAW 276 (4th Ed., 2004)). Maritime law follows the Restatement's approach in which the parties choice of law governs unless either (1) "the chosen state has no substantial relationship to the parties or the transaction, *and* 'there is no other reasonable basis for the parties' choice,'" or

---

[2] The enforceability of the choice-of-law provision is governed by maritime law. *See Gonzales v. Naiera Neptuno A.A.*, 832 F.2d 876, 880 n.3 (5th Cir. 1987) ("Although a federal court customarily applies the forum's choice of law analysis, sitting in admiralty, we apply admiralty choice of law.").

(2) "the state's law conflicts with the fundamental purposes of maritime law."[3] *Id.* at 242–43 (quoting Restatement (Second) of Conflict of Laws § 187 (1971) (italics in original)).  The party seeking to undo the contractual agreement bears the burden on these two issues. *Id.* at 244.

The Crons are unable to show that there is no reasonable basis for the parties' choice of New York law to govern the contract. *Id.* at 242.  *Great Lakes* held that there "is no showing that the fact that Great Lakes, a United Kingdom entity whose most substantial relationship in the United States is with New York, where it maintains its agent for service of process (as also reflected in the policy) and its United States Trust Fund account, does not constitute a reasonable basis for the choice of New York law to govern its marine insurance policy providing hull coverage to an ocean going vessel expected to travel up to 100 miles offshore along the United States Gulf Coast and the Gulf of Mexico." *Id.* at 244.  Many but not all of the same facts are present here: Marine is a UK insurance company that maintains its American trust fund account and resident agent for service of process

---

[3] The Court undertakes this line of analysis because that was the primary approach in *Great Lakes*.  It should be noted, however, that this analysis is unnecessary if the parties "could have resolved the issue by an explicit provision in their agreement directed to that issue." *Great Lakes*, 585 F.3d at 242 (citing Restatement (Second) Conflict of Laws § 187(1)).  The Crons have not identified any reason why Texas law would forbid an insurance contract from providing that any material misstatement would void a policy without inquiry into the insured's state of mind. *Cf. id.* at 245 (making the alternate holding that the plaintiff had not shown that the substantive New York law that would apply pursuant to the contract is one that the parties "could not have validly resolved (under Mississippi or general maritime law) by an explicit provision in the policy direct to that issue).

in New York. And of course, boats are inherently mobile and may move between jurisdictions, as demonstrated by the Crons' purchase of the RELENTLESS in New Jersey and subsequent transfer of it to Texas. The Crons have thus failed to establish that it is unreasonable for a foreign entity to apply the law of New York—the major American financial center—to maritime insurance contracts.

That leaves the question whether New York's application of *uberrimae fidei* runs contrary to the fundamental purposes of maritime law. It is unclear if this requires a comparison between New York law and general maritime law principles, or between New York law and the Texas law that maritime choice-of-law analysis would apply absent the forum selection clause, *see Kieu*, 927 F.2d at 887 (applying Texas law to similar facts because *uberrimae fidei* was not sufficiently entrenched in federal maritime law). Circuit law is not clear on which is the proper comparison. In a recent unpublished decision, the Fifth Circuit rejected the view that the "*Stoot* test . . . should be read to require a comparison of the chosen New York law with the forum state's law rather than federal maritime law." *See St St. Paul Fire & Marine Ins. Co. v. Bd. of Comm'rs of Port of New Orleans,* 418 F. App'x 305, 309 (5th Cir. 2011) (citing *Stoot v. Fluor Drilling Servs., Inc.*, 851 F.2d 1514, 1517 (5th Cir. 1988)). But *Stoot* did not identify "the forum state's law" as the basis for comparison; it summarized the inquiry as whether "application of the law of the chosen state would be contrary to a

fundamental policy of the jurisdiction which would provide the rule of decision for the particular issue involved in the absence of an effective contrary choice of law by the parties." *Stoot*, 851 F.2d at 1517. There is something to be said for the *Stoot* view because it is through application of maritime law principles that state insurance law applies in this context. *See Kieu*, 927 F.2d at 886 ("State law is particularly significant in marine insurance disputes . . ."); *Ingersoll-Rand Fin. Corp. v. Employers Ins. of Wasau*, 771 F.2d 910, 912 (5th Cir. 1985) ("[T]he interpretation of a contract of marine insurance is—in the absence of a specific and controlling federal rule—to be determined by reference to appropriate state law." (citing *Wilburn Boat Co v. Fireman's Fund Ins.*, 348 U.S. 310 (1955)). A comparison with the Texas law that would apply absent a choice-of-law provision thus arguably is a comparison with maritime principles and consistent with the "but for" nature of this choice-of-law determination. Because caselaw on this question is not consistent, however, the Court will follow the *Great Lakes* approach and conduct both comparisons. *See Great Lakes*, 585 F.3d at 244 (assuming arguendo that comparison with Mississippi law would be proper and conducting that inquiry after comparing with general maritime principles).

The first comparison is easily resolved. New York's requirement of utmost good faith cannot be contrary to the fundamental principles of general maritime law because maritime law applies the same standard. Although *Kieu* held that

*uberrimae fidei* was not *so entrenched* in federal maritime law that it displaces the state law that ordinarily governs marine insurance contracts, *Great Lakes* explained that to "hold that New York law, because it applies *uberrimae fidei*, conflicts with any fundamental purpose of maritime law, would be to unduly extend *Kieu* and to run counter to the great weight of authority which has embraced that doctrine in maritime insurance cases." *Id.*

Precedent also forecloses the Crons' argument that *uberrimae fidei* conflicts with a fundamental purpose of the Texas insurance law that would apply in the absence of the choice-of-law provision. *See Kieu*, 927 F.2d at 886. Although the difference between *uberrimae fidei* and Texas law is outcome determinative for the pending summary judgment, it requires more to establish that application of the agreed forum's law would undermine a fundamental purpose of Texas law. The intent issue was also outcome determinate in *Kieu*, but the court of appeals still had to consider a similar question in the opposite direction: whether application of Texas's intent requirement is "materially different" from maritime law's application of *uberrimae fidei* (even though the doctrine was held to not be firmly entrenched). The "materially different" standard requires an affirmative showing that state law "bears a reasonable similarity" to the federal maritime practice. *Kieu*, 927 F.2d at 887. The following reasoning in *Kieu* thus resolves the required comparison in this case:

> Texas law, unlike federal law, imposes an appropriate limitation that relatively minor misstatements which the insured did not intend to make do not afford the insurer an excuse to refuse payment. *The fundamental nature of both laws, however, is the same.* Texas insurance law shares the concern of federal maritime law that an assured should not profit from her material misrepresentations to the underwriter.

*Id.* (italics added). If Texas insurance law on misrepresentations is reasonably similar to the *uberrimae fidei* doctrine as *Kieu* held, then it follows that application of *uberrimae fidei* is not contrary to fundamental purposes of Texas insurance law.

The choice-of-law provision is thus valid and New York law governs. That law voids the policy based on the undisputed misrepresentation in the insurance application that inflated the purchase price of the boat by almost fivefold. Marine insurance cases have held that a misstatement about purchase price is material even if the misstated price reflects market value, a conclusion reinforced by the policy application in this case asking those questions separately. *See Certain Underwriters at Lloyd's v. Montford*, 52 F.3d 219, 222 (9th Cir. 1995) ("We reject Montford's argument that inserting the 'present market value' of a vessel, rather than the actual purchase price, is an acceptable industry practice in applying for marine insurance *when the application specifically asks for the purchase price*. Under these circumstances, the vessel's purchase price is unquestionably a fact material to the risk. Underwriters were entitled to void the policy based on Montford's material misrepresentation, and the district judge did not err in granting

summary judgment on this ground.") (emphasis in original); *Commercial Union Ins. Co.,* 392 F. Supp. 2d at 405–06.

### III. CONCLUSION

For the above reasons, the Court **GRANTS** Marine's Motion for Summary Judgment (Docket Entry No. 65) and declares the parties' insurance policy void. Because there was no valid insurance policy, the Crons' counterclaims which depend on the existence of such a policy are **DISMISSED WITH PREJUDICE**.

**SIGNED** this 12th day of September, 2014.

　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　Gregg Costa
　　　　　　　　　　　　　United States Circuit Judge[*]

---

[*] Sitting by designation.